# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DENNIS JEFFERSON, | ) |
| | ) |
| **Plaintiff,** | ) Case No. |
| | ) |
| | ) Judge |
| **v.** | ) |
| | ) **JURY DEMAND** |
| FRESENIUS MEDICAL CARE | ) |
| HOLDINGS, INC., D/B/A | ) |
| FRESENIUS MEDICAL CARE | ) |
| NORTH AMERICA; | ) |
| NATIONAL MEDICAL CARE | ) |
| INC.; D/B/A FRESENIUS | ) |
| MEDICAL CARE NORTH | ) |
| AMERICA; | ) |
| | |
| **Defendants.** | |

## COMPLAINT

Come now Plaintiff, Dennis Jefferson, and bring this cause of action against Defendant, Fresenius Medical Care Holdings, Inc., and National Medical Care Inc., who both are doing business as Fresenius Medical Care North America for racial discrimination and retaliation in violation of 42 U.S.C. §1981 and the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000(e) et seq., commonly referred to as Title VII, stating the following:

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §§2000e-5, 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, and pursuant to 28 U.S.C. § 1331, which confers original

1

jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

2. Venue is proper under U.S.C. § 1343(4) and 28 U.S.C. § 1331 because the Defendants conduct business in the State of Tennessee and engaged in and/or ratified the illegal conduct that adversely affected the Plaintiff's in the State of Tennessee. (Exhibit 1)

3. Plaintiff filed his charges with the EEOC within three hundred (300) days of the continuing harassment; and this cause of action is being filed within 90 days of issuance of Plaintiffs' charge 494-2022-02331 Right to Sue letter, dated September 13, 2022. (Exhibit 2)

## II. THE PARTIES
## THE PLAINTFF

4. Plaintiff Jefferson is an African-American adult, male citizen who resides in Nashville, Tennessee. He is a recent terminated employee of the defendant as of July 21, 2022, where he has worked for over nine years as a User Security Administrator to include training, supervision of employee improvement and development of departmental policy and procedure manuals.

5. Plaintiff Jefferson has industry certifications as a CompTIA A+ -Lifetime certificate, CompTIA Network+ - Lifetime certificate, ITIL IT Service Management - Lifetime certificate, and previously certified as a Microsoft Certified Professional (MCP), Microsoft Certified Desktop Support Technician (MCDST), Microsoft Certified System Administrator (MCSA), Microsoft Office Specialist (MOS).

2

6. Plaintiff Jefferson has also served as an Instructor for IT certification, and currently hold certifications in FEMA Introduction to National Incident Management Systems, ICS for Single Resources and Initial Action Incidents (ICS-200), Introduction to Incident Command Systems (ICS-100), and FEMA National Response Framework.  He has over 19 years of IT experience, which has mostly been served in the Information Technology Health Industry.

7. Jefferson also has recently obtained a bachelor's and Master's in Criminal Justice from Austin Peay State University in Clarksville, TN.

8. The plaintiff was switched to a remote employee after the outburst of the COVIC pandemic of 2019.

## B. The Defendant

9. The defendant is a German based Company operating under Fresenius Medical Care Holdings, INC., doing business as Fresenius Medical Care North America (FMCNA) which was formed with the merger of Fresenius USA, Inc., and National Medical Care's North American dialysis business, doing business as Fresenius Medical Care North America (FMCNA). The defendant's American headquarters are located at 920 Winter Street, Waltham, Massachusetts.

10. The defendant is one of the world's largest providers of products and services for individuals undergoing dialysis treatment because of chronic kidney failure. They have become the continent's leading dialysis provider and renal products manufacturer which provides services to more than 2.1 million individuals worldwide.

3

11. The defendant has a local Office located at 1000 Corporate Centre Dr., Franklin, Tennessee, where the defendant help provide services to a network of more than 2,100 facilities in North America thru full-time as well as contracted employees.

### III.  FACTS

12.  **Paragraphs 1 through 11 are incorporated herein by reference.**

13.   The defendant hired the Plaintiff as a contractor in the position of a User Security Administrator on or about January 17, 2011, to work at its former Corporate Office located at 784 Melrose Ave Nashville, Tennessee.

14. The defendant would then offer the Plaintiff a full-time position as a User Security Administrator on or about April 13, 2013.

15. Since the initial employment contact, the defendant has repeatedly isolated and or prohibited the Plaintiff from being fully cross trained and or educated in the assigned duties of a User Security Administrator by regulating the plaintiff to phone support for password resets, and limited application support concerning the duties of the department from January 2011 – July 21, 2022.

16. Moreover, the defendant assigned certain tasks and duties outside phone support to the Plaintiff white team members that allowed them to advance in leadership positions as team leads, Senior technicians, or allowed them to be promoted within the company.

17.  Moreover, the defendant continued its discriminatory actions for promotions and advancement toward the Plaintiff by scaling back the Plaintiffs performance appraisals, while evaluating his white co-workers at a higher performance level for advancement and promotions who were less educated and experienced in the technology field.

4

18. To support their discriminatory behavior, the defendant continuously hired managers over the User Security department that did not understand the expectations, skills, and training needed for the team members in the department, thus rendering a bias performance appraisal due to management lack of experience and or training on each departmental application assigned to User Security team members.

19. In fact, the Plaintiff last performance review in April of 2022, as a User Security Administrator, the plaintiff Manager Mr. Dorval, informed the Plaintiff that the company does not give out anything but level 3 on appraisals. He further explained that he (Mr. Dorval) got a 3 on his review by Mr. Cantwell for his performance, despite all the work he has done in the department to bring the department up to date concerning the massive backlog on user request for access.

20. The defendant foreknew their conduct discriminated against the plaintiff because their actions would isolate the Plaintiff, thus limiting his exposure in the department and throughout the company, which allowed the defendant to favor and govern who could apply and be considered for open promotions on the bases of race.

21. The defendant assessment given during performance appraisals of their employees are bias and permits the defendant to establish a policy and practice of discriminating against the Plaintiff and minorities throughout their enterprises.

22. The defendant never corrected and or properly governed their discriminatory practice even after the Plaintiff filed a complaint in U.S. District Court for the Tennessee Middle District Court on April 11, 2017.

## FIRST COMPLAINT

23. **Paragraphs 1 through 22 are incorporated herein by reference.**

5

24. The Plaintiff was hired as a User Security Administrator and was never granted the equal opportunity to develop and train in the duties assigned under the contractual agreement as similar situated white team members.

25. The Plaintiff first federal complaint filed April 11, 2017, specifically complained about his white team members being favored in job assignments, giving advance notice of job postings, and promotions to supervisor or manager positions without industry education or certification, which discriminated against the Plaintiff.

26. The defendant proffered an explanation that their decision was based on a legitimate business need and used Mr. Lay's performance appraisal as a foundation in making the decision.

27. The defendant's decision was presumed to be made from an established equal opportunity environment within the User Security department and company, and that Mr. Lay took the initiative to learn and advance in the department without the cultivating actions of the defendant. More specific, that Mr. Dixon and Mr. Schambeck conferred and found Mr. Lay to be the best candidate.

28. However, if the defendant would have made or implemented corrections that addressed how each User Security Administrator was trained and developed in all departmental duties after the resolution of the Plaintiff first complaint, then the defendant would have properly addressed and resolved further acts of discrimination against the Plaintiff.

29. The Plaintiff's contact to management on or about November of 2012, October 17, 2015, and the first complaint filed on federal court, notified the defendant that they were operating and or created an environment that did not provide an equal

6

opportunity for training and developing all User Security employees in a fair and impartial manner, and the defendant for knew that continuing in such actions would prejudice the Plaintiff.

30. The defendant has a legal obligation to abide by the laws of the land in ensuring that all employee training and development will provide an equal opportunity within the company.

31. By the defendant's own admission to the court in seeking summary judgement, the Plaintiffs job was to support the SAP application and did not have the attributes they sought for the team lead position, which give rise to isolating the Plaintiff access to similar training and development for advancement opportunities in departmental duties during plaintiff first cause of action, which continued until Plaintiff termination on July 21, 2022, even though the Plaintiff was hired with the same title and position as his similar situated white coworkers, which were Mr. Whitehead, Mr. Lay, Mr. Fontana, and Mr. Goostree.

32. Additionally, the defendant is and has always been in control of each employee work assignments and development during the Plaintiff employment with the defendant in the User Security Department, and the defendant for knew that no security team member could work or not work on assignments unless trained and assigned to them directly by the defendant.

33. The proffered legitimate business decision offered by the defendant in the plaintiffs first cause of action was derived from an atmosphere of discriminatory business practices, and the defendant continued denying training and development as a User

7

Security Administrator to the Plaintiff by isolating the Plaintiff in a position that limited his exposure to the company, skills, and education until his termination.

34. Moreso that, the Plaintiff white team members had no industry education, certification, and limited work experience in the technology field, which the defendant favored by providing them on the job training with access to all departmental duties and favored their performance and development, while isolating the plaintiff to specific tasks in the department.

35. The defendant willfully took extra steps to further conceal its discriminatory behavior to the court by intentionally misrepresenting the education and skills of the plaintiff by submitting erroneous statements of facts concerning the Plaintiff certifications into record which tried to conceal the plaintiff lifetime industry certifications in CompTIA A+ and CompTIA Network+. (Exhibit 3)

36. The proffered legitimate business reason given by the defendant in the Plaintiffs first complaint before the court is an established pretextual discriminatory policy and practice, and the defendant continued their discriminatory acts against Plaintiff by not providing an equal opportunity of employment for advancement, which continued until terminating the Plaintiff employment on July 21, 2022.

## RETALIATION

37. **Paragraphs 1 through 36 are incorporated herein by reference.**

38. The Plaintiff manager(s), Steve Hurley, Joe Dixon, Dan Dorval, John Webb, and Sander Schambeck continuously informed the Plaintiff that from April 2013 – June 2022, that a higher appraisal number was only reserved for those specific individuals

8

who were going to be given a promotion for advancement for open positions, thus rending a bias evaluation-based on company openings and not truly on employee performance.

39. In fact, the Plaintiff manager, Mr. Dorval during his initial hiring in the department, informed the Plaintiff that if he did not provision access to the SAP application for end users, that no one would get access to the diabetes manufacturing, warehouse supplies, nor proper accounting because none in the User Security department knew or could provision the access correctly besides the Plaintiff.

40. The Plaintiff only other assigned duty in the department was on the eCube Financial Application from July of 2013 until October of 2015, which the defendant reassigned the plaintiff due to the failing support of his white teammate Mr. Fontana, who was eventually promoted to senior technician in the User Security department.

41. While the Plaintiff supported the eCube Financial application, it was a 100% manual provisioning process which the Plaintiff was able to revert a 60 day back log/waiting period for access, down to a one day process. (Exhibit 4 & 5)

42. Being duly affirmed of the actions and penalties of discrimination in the workplace, the defendant tried to hide their discriminatory behavior from the court by giving favorable performance reviews to plaintiff minority teammate that had less seniority and experience than the plaintiff, Mr. Ndinda - Black, while intentionally ignoring the Plaintiff exceptional performance in the department.

43. The favorable performance appraisal for minorities in the department only came into view after the Plaintiff filed his first cause of action in Federal court.

44. The performance appraisal of Mr. Ndinda is subject to bias because Mr. Ndinda did not inherit a back log from the Plaintiff transfer to the SAP application; the defendant automated the provisioning process of the eCube financial application from a 100% manual process to a 90% automation process shortly after the Plaintiff transferred to the SAP application; and on or about July of 2018, Mr. Whitehead informed the plaintiff that he told, then manager Dan Dorval, that the User Security department did not require a fulltime technician for the eCube Financial application because he was able to process the 30 day back log, solely under Mr. Ndinda support, to a zero balance in 7 hours.

45. Shortly after this notification, Mr. Whitehead was isolated to the Kronos application until his forced termination by the defendant on February 04, 2022, which Mr. Whitehead participated in the Plaintiffs charge of discrimination with factual events concerning the defendants acts of discrimination in the department. (Exhibit 6)

46. Furthermore, the Plaintiff was considered the User Security Administrator subject matter expert (SME) on the application he was isolated to support, and the defendant rendered his expertise the sole authority in compliance, processes, and procedures concerning access to the SAP application. However, the Plaintiff still received less favorable performance reviews than his less educated, trained, or experienced white team members even though the Plaintiff performance review only covered the isolated SAP application he was forced to support. (Exhibit 7)

47. Perspectively, The defendant depended on the Plaintiff to solely support over 6,000 active users requests, 4,000 inactive users accounts, maintain and govern nearly 6,000 productive roles in the SAP P16, PBW, and CRM applications, perform numerous

compliance audits, support new projects that were implemented in 6 phases of 1,000 requests each; while provisioning current user request, develop training documentation, address ticket escalations, attend meetings that involved user access issues, disabling/enabling accounts, password resets, security compliance reviews, and new role creations or deletions.

48.  Furthermore, the defendant even asked the Plaintiff to remain online with pay and stay available by phone just in case there was a need that arose for SAP access while the Plaintiff was out on bereavement leave for the death of his nephew on or about March 1, 2022.

49.  Moreover, the defendant informed the User Security Department that their outsourced job would not affect their employment, that each employee would be moved into open positions in the company that the employee select, and that the company would send the employee back to school if education was needed for the selected position.

50.  However, the defendant allowed the Plaintiffs coworkers who did not participate in the plaintiff's first cause of action, or was as a target in that cause, to find and transfer to departments of their choice or with defendant's interference but forced the termination of the employees that participated in a protected act, which was Mr. Whitehead and the plaintiff.

51.  The defendants discriminatory acts can be exampled in the cross training and development of the outsourced staff contracted to take over the duties of the User Security Department on or about November 2022, which the defendant ensured that

the contracted staff received cross training in every departmental function and assigned duties expected of a User Security Administrator.

52. The actions of the defendant continued to discriminate against the Plaintiff by not developing an equal opportunity environment for advancement in the User Security department, and the defendant would continue to isolate the Plaintiff since his initial employment contract began, after seeking relief in federal court, and until the plaintiff termination based on race.

53. The defendant allowed the plaintiff white team members to advance or be promoted regardless of education and due to the lack of an established equal opportunity environment, which permitted the defendant to submit bias performance appraisals that attempted to hide defendant's act of discrimination and retaliate against the plaintiff, which the Plaintiffs performance appraisals never reflected his exceptional performance and commitment to the defendant.

## CAUSE OF ACTION

54. **Plaintiffs adopts herein the facts set forth above in paragraphs 1 through 53 as though repeated herein.**

55. Plaintiff assert that he has been individually affected by the inability to receive promotions and being required to work in an environment where he has been treated as lesser citizens and employees, unworthy of being moved up within the company to advanced, supervisory or managerial positions, because of his race.

56. Plaintiffs assert that as a result of this discriminatory behavior he has suffered compensatory damages for embarrassment and humiliation and/or emotional damages as well as lost wages and business opportunities.

56. The Plaintiff suffered racial discrimination and harassment throughout his employment with Defendant as set forth above. Plaintiff assert this conduct violates both 42 U.S.C. §2000eet seq. (Title VII) and 42 U.S.C. §1981.

58. The Plaintiff was denied advancement and promotional opportunities for which he was qualified due to the discriminatory hiring and promotional practices of Defendant, because of his race, to wit: African American. Plaintiff assert that this conduct violates both 42 U.S.C.§2000e et seq. (Title VII) and 42 U.S.C. §1981.

## DAMAGES

57. As a result of the conduct described herein, Plaintiff has suffered and continues to suffer, emotional damages, embarrassment and humiliation, lost job opportunities and wages, for which he is entitled to all damages available under 42 U.S.C. §2000e et seq., and 42 U.S.C.§1981.

58. Plaintiff further sue for punitive damages, pursuant to statute, if the facts determined during discovery and the trial of this cause establish that punitive damages are appropriate.

59. Plaintiff further sue for fees, court costs and discretionary costs as the prevailing party, as authorized by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1. Barring any Bias of the court/justice system that include but not limited to:

    a. Allowing the defendant the privilege of not entering their corporate disclosure statement in a timely manner. (3:17-cv-00697, DE: 36)

    b. Allowing the defendant the right to enter disingenuous pleadings that erroneously try to hide the legal connection and use of its active assumed named for their entities. (3:17-cv-00697, DE: 7; 8; & 36)

13

c. Allowing the defendant the privilege of responding to court orders at their directive, thus needing to extend discovery. (3:17-cv-00697, DE: 60)

d. Allowing court reporting agencies to change deposition dates without giving Plaintiff proper notice and the exact address of the new location (example: north or south).

e. Allowing court clerk's office to give out unofficial copies of court taped hearing(s);

f. Allowing court clerk's office the right to delay in entering/sending out court orders to the plaintiff;

g. Altering court transcripts to hide bias statements that favor the defendant.

h. Allowing court clerk to claim credit machine broke and need exact change just to take another customer credit payment after Plaintiff leave the window or disable Plaintiff method of payment on Pacer Monitor when the card on file has more than available funds nor does it not expire for 2 or more years

i. Judicating the case in favor of the defendant by seeking a form over substance process.

2. Plaintiff be allowed to file this complaint and that Defendant be required to answer the complaint in the time provided by law;

3. That after the discovery process, this case be heard on its merits;

4. That the Plaintiff be awarded $1,500,000 in compensatory damages and all lost wages he has suffered;

5. The Plaintiff be awarded back pay and front pay due to their loss of employment opportunities with Defendant;

6. That Plaintiff be awarded court costs, discretionary costs, and all further relief to which each is entitled;

7. That Plaintiff be awarded punitive damages in the amount to be determined by the court and/or jury; and

8. That Plaintiff be awarded all such further and general relief that the Court deems

appropriate to include a Court order barring the defendant from future behavior.

Respectfully Submitted,

Dennis Jefferson
Pro Se
321 Gaywood Dr.
Nashville, TN  37211
(314)265-4558
Dejefferson9@hotmail.com

## CERTIFICATE OF SERVICE

I, Dennis Jefferson, do swear or declare that a true copy of the Complaint filed and Summons will be served upon all parties as required by depositing the same in the United States mail, postage prepaid, this ___25th___ day of _____October_____, 2022 addressed to: Corporate Offices of:

FRESENIUS MEDICAL CARE HOLDINGS, INC.
D/B/A FRESENIUS MEDICAL CARE NORTH AMERICA
920 Winter Street
Waltham, MA 02451-1457

NATIONAL MEDICAL CARE, INC.,
D/B/A FRESENIUS MEDICAL CARE NORTH AMERICA
920 Winter Street
Waltham, MA 02451-1457

Registered Agent for service
C.T. Corporation System
300 Montvue RD
Knoxville TN 37919-5546

I declare under penalty of perjury that the forgoing is true and correct. Executed on

_October  25th__ , 2022

15