UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DENNIS JEFFERSON,<br><br>    Plaintiff,<br><br>v.<br><br>FRESENIUS MEDICAL CARE HOLDINGS, INC., D/B/A FRESENIUS MEDICAL CARE NORTH AMERICA et al.,<br><br>    Defendants. | Case No. 3:22-cv-00862<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

This action brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e–2000e-17, and 42 U.S.C. § 1981, arises out of pro se Plaintiff Dennis Jefferson's employment with Defendants Fresenius Medical Care Holdings, Inc., and National Medical Care, Inc. (Doc. No. 1.) Jefferson, who is African American, alleges that the defendants discriminated against him because of his race and retaliated against him for participating in a prior federal employment discrimination lawsuit against them. (*Id.*) The defendants have filed a motion to dismiss Jefferson's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. (Doc. No. 10.) Jefferson filed a response in opposition (Doc. No. 17), and the defendants filed a reply (Doc. No. 18).

The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 5.) For the reasons that

follow, the Magistrate Judge will recommend that the defendants' motion to dismiss be granted in part and denied in part.

I. Background

A. Factual Background[1]

The defendants are "one of the world's largest providers of products and services for individuals undergoing dialysis treatment because of chronic kidney failure." (Doc. No. 1, PageID# 3, ¶ 10.) Jefferson—an African American man who lives in Nashville, Tennessee—worked as a User Security Administrator for the defendants for more than nine years. (Doc. No. 1.) He began his employment as a contractor in January 2011 and accepted the defendants' offer of full-time employment in April 2013. (*Id.*)

Jefferson alleges that, "[s]ince the initial employment cont[r]act, the defendant[s] ha[ve] repeatedly isolated and or prohibited [him] from being fully cross trained and [ ] educated in the assigned duties of a User Security Administrator . . . ." (*Id.* at PageID# 4, ¶ 15.) He states that the defendants relegated him "to phone support for password resets" and other "limited application support" roles and assigned tasks to "white team members that allowed them to advance in leadership positions as team leads, [s]enior technicians, or allowed them to be promoted within the company." (*Id.* at ¶ 16.) Jefferson alleges that the defendants engaged in "discriminatory actions for promotions and advancement . . . by scaling back [his] performance appraisals, while evaluating his white co-workers at a higher performance level for advancement and promotions" even though the co-workers "were less educated and experienced in the technology field." (*Id.* at ¶ 17.) He states that the defendants' biased performance review process "establish[ed] a policy and

---

[1] The facts in this section are drawn from Jefferson's complaint (Doc. No. 1) and taken as true for purposes of resolving the defendants' motion to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

practice of discriminating against [him] and minorities throughout their enterprises." (*Id.* at PageID# 5, ¶ 21.)

Jefferson "contact[ed] . . . management on or about November of 2012, [and on] October 17, 2015," to "notif[y] the defendant[s] that they . . . [had] created an environment that did not provide an equal opportunity for training and developing all User Security employees in a fair and impartial manner[.]" (*Id.* at PageID# 6–7, ¶ 29.) Jefferson and several African American co-workers filed a complaint against the defendants in this Court on April 11, 2017. (Doc. No. 1.) They alleged that the defendants discriminated against them by "favor[ing white team members] in job assignments, giving [the white team members] advance notice of job postings, and promoti[ng the white team members] to supervisor or manager positions without industry education or certification[.]" (*Id.* at PageID#6, ¶ 25.)

Jefferson alleges that, "even after" he and his coworkers filed the 2017 action, the defendants "continued [their] discriminatory actions for promotions and advancement" and "never corrected . . . their discriminatory practice . . . ." (*Id.* at PageID# 4, 5, ¶¶ 17, 22.) He states that the defendants informed User Security Department employees that their jobs would be outsourced but promised that the outsourcing "would not affect their employment" because "each employee would be moved into open positions in the company that the employee select[ed], and that the company would send the employee back to school if education was needed for the selected position." (*Id.* at PageID# 11, ¶ 49.) Jefferson alleges that, while the defendants allowed his "coworkers who did not participate in the [2017] action . . . to find and transfer to departments of their choice . . . [,]" they "forced the termination of the employees that participated in" the lawsuit or otherwise complained about discrimination, including Jefferson. (*Id.* at ¶ 50.) Jefferson states that the defendants terminated his employment on July 21, 2022. (Doc. No. 1.)

B.     **Procedural History**

The operative pleading in Jefferson's 2017 action[2] against the defendants alleged that the defendants engaged in discriminatory hiring and promotion practices that harmed Jefferson and other African American employees in violation of Title VII and § 1981.[3] Plaintiffs' Third Amended Complaint, *Jefferson v. Fresenius Med. Care Holdings, Inc.*, No. 3:17-cv-00697 (M.D. Tenn. Apr. 4, 2018), ECF No. 53. The defendants moved for summary judgment, and the Court entered summary judgment in their favor. *Jefferson v. Fresenius Med. Care Holdings, Inc.*, No. 3:17-cv-00697, 2019 WL 4725194 (M.D. Tenn. Aug. 30, 2019) (*Jefferson I*), *report and recommendation adopted*, 2019 WL 4689001 (M.D. Tenn. Sept. 26, 2019). Jefferson appealed, and the Sixth Circuit affirmed the district court's grant of summary judgment. Order, *Hannah v. Fresenius USA Mfg., Inc.*, No. 19-6209 (6th Cir. July 28, 2020), ECF No. 17-2. The Supreme Court denied Jefferson's petition for a writ of certiorari on January 11, 2021. Letter Denying Petition for Writ of Certiorari, *Hannah v. Fresenius USA Mfg., Inc.*, No. 19-6209 (6th Cir. Jan. 11, 2021), ECF No. 20.

Jefferson initiated this action on October 25, 2022, by filing a complaint against the defendants alleging claims of racial discrimination and retaliation under Title VII and § 1981. (Doc. No. 1.) Jefferson's complaint contains allegations describing the defendants' conduct

---

[2]     Because Jefferson's complaint and other filings in the 2017 action are matters of public record and integral to his claims in this action, the Court may consider these materials in resolving the defendants' motion to dismiss. *See, e.g.*, *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) ("In addition to the allegations in the complaint, [when ruling on a Rule 12(b)(6) motion to dismiss] the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.").

[3]     The 2017 action was brought by five plaintiffs, two of whom were dismissed before final judgment. *Jefferson v. Fresenius Med. Care Holdings, Inc.*, No. 3:17-cv-00697, 2019 WL 4725194, at *1 & n.1 (M.D. Tenn. Aug. 30, 2019), *report and recommendation adopted*, 2019 WL 4689001 (M.D. Tenn. Sept. 26, 2019).

throughout the duration of his employment, beginning with his hiring as a contractor in January 2011 and continuing through the defendants' termination of Jefferson's employment in July 2022. (*Id.*) The complaint describes the 2017 action in detail, including its pleadings, motions, and judgment. (*Id.*) Jefferson seeks $1.5 million in compensatory damages and additional punitive damages. (*Id.*)

The defendants moved to dismiss Jefferson's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. (Doc. No. 10.) They argue that the doctrine of res judicata bars Jefferson's discrimination and retaliation claims and that Jefferson has failed to allege sufficient facts to support his retaliation claims. (Doc. No. 11.) They also argue, in the alternative, that Jefferson is acting in bad faith by attempting "to re-litigate the Court's prior rulings" from the 2017 action and that the Court should dismiss his complaint as a sanction for that conduct. (*Id.* at PageID# 58.) The defendants ask the Court to grant their motion to dismiss and award them attorney's fees and costs. (Doc. No. 11.)

Jefferson responds that res judicata does not apply because his claims in this action are based on "new facts" and a "continuation of [the defendants'] discriminatory acts" against him. (Doc. No. 17, PageID# 154.) He further argues that his complaint states plausible claims for relief because it includes "names, dates, times, locations, [and] alleged facts, and presents a cognizable legal theory." (*Id.*)

The defendants filed a reply reiterating their argument that res judicata bars Jefferson's claims because his complaint "is littered with issues which were, or could have been asserted in his 2017 action." (Doc. No. 18, PageID# 166.) They dispute that Jefferson's complaint asserts any "new facts" and argue, instead, that Jefferson "is simply regurgitating the arguments from his prior

case." (*Id.*) The defendants also reiterate their argument that Jefferson has not sufficiently stated a retaliation claim. (Doc No. 18.)

II.     **Legal Standard**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Jefferson appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However,

this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.     Analysis**

Federal courts use the same framework for analyzing claims brought under Title VII and § 1981. *Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 862 (M.D. Tenn. 2021); *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019). To state a claim of discrimination under these statutes, Jefferson must allege sufficient facts from which the Court can reasonably infer that the defendants discriminated against him "with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1); *see Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (articulating pleading standard for discrimination claims under Title VII and § 1981). To state a retaliation claim, Jefferson must sufficiently allege that the defendants discriminated against him because he "opposed" any such discrimination. 42 U.S.C. § 2000e-3(a); *see Trevino v. Austin Peay State Univ.*, No. 3:11-cv-01139, 2012 WL 951488, at *3–4 (M.D. Tenn. Mar. 19, 2012) (articulating pleading standard for retaliation claims under Title VII).

**A.     Application of Res Judicata**

The defendants' primary argument in support of dismissal is that the doctrine of res judicata bars Jefferson's claims. (Doc. Nos. 11, 18.) "The doctrine of res judicata includes two separate concepts—issue preclusion and claim preclusion." *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999). "Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated and as to every theory of recovery that could have been presented." *Funk-Vaughn v. Rutherford Cnty.*,

No. 3:18-cv-01311, 2019 WL 4727642, at *2 (M.D. Tenn. Sept. 27, 2019) (quoting *Taylor v. U.S. Gov't*, 21 F. App'x 264, 265 (6th Cir. 2001)). "Under issue preclusion, once an issue actually is determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action when used against any party to the prior litigation." *Silva v. 13 Mgmt.*, No. 3:21-cv-00741, 2021 WL 4894606, at *1 (M.D. Tenn. Oct. 20, 2021). "The purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981).

"In Anglo-American jurisprudence, 'claim preclusion' . . . has frequently been used synonymously with 'res judicata,' and issue preclusion has frequently been used synonymously with 'collateral estoppel.'" *Southall v. USF Holland, LLC*, No. 3:19-cv-01033, 2021 WL 396688, at *2 (M.D. Tenn. Feb. 3, 2021). However, "the terminology is not quite so simple in federal court, where the term 'res judicata' sometimes is used as if it refers to both claim preclusion and issue preclusion." *Id.* The defendants do not distinguish between claim preclusion and issue preclusion in their briefing, but ask the Court to apply the legal standard that governs claim preclusion. (Doc. No. 11.) The Court therefore construes the defendants' res judicata arguments as claim preclusion arguments.

Jefferson's complaint asserts three categories of claims against the defendants: (1) discrimination claims arising before the 2017 action (pre-2017 discrimination claims); (2) discrimination claims arising after the 2017 action (post-2017 discrimination claims); and (3) retaliation claims arising after the 2017 action (retaliation claims). (Doc. No. 1.) To establish that claim preclusion bars these claims, the defendants must show:

> "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the

8

Case 3:22-cv-00862    Document 22    Filed 08/07/23    Page 8 of 16 PageID #: 183

subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action."

*Trs. of Operating Eng'rs Local 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 380 (6th Cir. 2019) (quoting *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002)); *see also Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (same). All four elements must be present for claim preclusion to apply. *Trs. of Operating Eng'rs Local 324 Pension Fund*, 919 F.3d at 380.

The defendants argue, and Jefferson does not dispute, that the first two elements are satisfied with respect to each category of claims. (Doc. Nos. 11, 17.) This Court had jurisdiction over Jefferson's prior action against these defendants and issued a final order granting the defendants' motion for summary judgment after finding that Jefferson's failure-to-promote and racial harassment claims lacked merit. *Jefferson I*, 2019 WL 4725194 at *10–12, 15. The parties disagree, however, about whether the third and fourth elements apply to Jefferson's discrimination and retaliation claims.

The question of whether the defendants discriminated against Jefferson in violation of Title VII and § 1981 before he filed the 2017 action was litigated in that action. *See Jefferson I*, 2019 WL 4725194, at *4, 10–12, 15; Plaintiffs' Third Amended Complaint, *Jefferson v. Fresenius Med. Care Holdings, Inc.*, No. 3:17-cv-00697 (M.D. Tenn. Apr. 4, 2018), ECF No. 53. The third element of claim preclusion is therefore satisfied with respect to any pre-2017 discrimination claims against the defendants.

The defendants argue that the third element is also satisfied for Jefferson's post-2017 discrimination claims because Jefferson alleges that the conduct underlying these claims was a continuation of the conduct underlying the pre-2017 discrimination claims and the Court determined in the 2017 action that the pre-2017 conduct was not discriminatory. (Doc. No. 11.)

Jefferson responds that his complaint includes "new facts" that "could not be presented in the first cause of action" because they were not "ripe to be alleged." (Doc. No. 17, PageID# 156.)

Jefferson's complaint alleges that the defendants' racially discriminatory conduct began when Jefferson was hired and continued after Jefferson filed the 2017 action. (Doc. No. 1.) Jefferson states that:

> Since the initial employment cont[r]act, the defendant[s] ha[ve] repeatedly isolated and or prohibited [him] from being fully cross trained and or educated in the assigned duties of a User Security Administrator by [relegating him] to phone support for password resets, and limited application support concerning the duties of the department from January 2011–July 21, 2022.

(*Id.* at PageID# 4, ¶ 15.) Jefferson also alleges that, throughout his employment, "the defendant[s] continuously hired managers over the User Security department that did not understand the expectations, skills, and training needed for the team members in the department[.]" (*Id.* at PageID# 5, ¶ 18.) He further alleges that the defendants "never corrected [ ] or properly governed their discriminatory practice even after [he and others] filed" their first action under Title VII and § 1981. (*Id.* at ¶ 22.) Instead, Jefferson alleges, the defendants "continued [their] discriminatory actions for promotions and advancement . . . by scaling back [Jefferson's] performance appraisals, while evaluating his white co-workers at a higher performance level" to promote them over Jefferson, even though they were "less educated and experienced . . . ." (*Id.* at PageID# 4, ¶ 17.)

Courts in this circuit have found that, in the rare circumstance where "it is obvious that the alleged ongoing unlawful conduct" raised in a subsequent action "is actually the defendant continuing on the same course of conduct which has previously been found by a court to be proper and lawful," the court "must conclude that the plaintiff is simply trying to relitigate the same claim which is barred by res judicata." *Zibbell v. Marquette Cnty. Res. Mgmt.*, No. 2:12-cv-302, 2013 WL 625062, at *11 (W.D. Mich. Feb. 20, 2013); *see also Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002) (same). Jefferson argues that his post-2017 discrimination claims are

sufficiently factually and legally distinct from his pre-2017 discrimination claims to withstand the defendants' motion to dismiss, but his arguments are unpersuasive. For example, Jefferson argues that his post-2017 discrimination claims are different from his prior claims because his performance "evaluations did not start to get worse until after [he filed] the first cause of action" in 2017. (Doc. No. 17, PageID# 157.) He also argues that his complaint contains allegations about a 2022 conversation with his manager regarding performance evaluation appraisal numbers. (Doc. No. 17.)

These arguments contradict the allegations in Jefferson's complaint that he received less-favorable performance reviews than his white coworkers throughout his employment (Doc. No. 1) and that his managers "continuously informed [him] from April 2013 [until] June 2022, that a higher appraisal number was only reserved for those specific individuals who were going to be given a promotion . . ." (*id.* at PageID# 8–9, ¶ 38). Jefferson cannot defeat the defendants' motion to dismiss by making arguments that contradict the allegations of his complaint. *See, e.g.*, *Livingston v. Jay Livingston Music, Inc.*, No. 3:21-cv-00780, 2023 WL 4471705, at *3 (M.D. Tenn. July 11, 2023) ("Allegations from a plaintiff that contradict the complaint are routinely disregarded."); *Marsh v. ProNova Sols., LLC*, No. 3:20-cv-393, 2021 WL 1258585, at *1 (E.D. Tenn. Mar. 11, 2021) (rejecting plaintiffs' argument in opposition to defendants' motion to dismiss because plaintiffs' argument "clearly contradict[ed] their own complaint"). Jefferson also relies on *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516 (6th Cir. 2011), for the proposition that, "[w]ith the right new facts, res judicata does not bar [a] second suit." (Doc. No. 17, PageID# 155.) But Jefferson has not plausibly alleged any material new facts in support of his post-2017 discrimination claims. The third element of claim preclusion is satisfied with respect to Jefferson's post-2017 discrimination claims.

11
Case 3:22-cv-00862    Document 22    Filed 08/07/23    Page 11 of 16 PageID #: 186

The same cannot be said, however, for Jefferson's retaliation claims. Jefferson's complaint specifically alleges that, when his entire department was outsourced, the defendants allowed employees who did not participate in the 2017 action or otherwise complain about discrimination to transfer to other positions within the company but terminated Jefferson's employment because he had filed the 2017 action. (Doc. No. 1.) Jefferson argues that he "could not have raised an issue with retaliation in the first cause of action because" the defendants had not yet terminated his employment. (Doc. No. 17, PageID# 158.) The defendants argue that Jefferson's "employment ended in July 2022, as a result of planned outsourcing impacting the entire department" (Doc. No. 18, PageID# 167), and that Jefferson's "allegations related to his termination clarify that it was [ ] unrelated to his 2017 Complaint" (*id.* at PageID# 168). This argument glosses over the heart of Jefferson's retaliation claims—his allegations that the defendants treated him differently than other employees whose jobs were outsourced by terminating his employment instead of allowing him to transfer to another position because he filed the 2017 action. The defendants have not explained how Jefferson could have litigated retaliation claims based on the 2017 action in the 2017 action, which concluded before the defendants terminated Jefferson's employment. The Court therefore finds that the third element of claim preclusion is not satisfied for Jefferson's retaliation claims.

The fourth element of claim preclusion requires an identity of causes of action between the first and second actions. *Trs. of Operating Eng'rs Local 324 Pension Fund*, 919 F.3d at 380. The Sixth Circuit has explained that:

> An identity of the causes of action exists "if the claims arose out of the same transaction or series of transactions, or if the claims arose out of the same core of operative facts." *Winget v. JP Morgan Chase Bank*, 537 F.3d 565, 580 (6th Cir. 2008). This Court has also stated that an identity of causes of action exists if there is an identity of "the facts creating the right of action and of the evidence necessary to sustain each action," *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973

> F.2d 474, 484 (6th Cir. 1992), the evidentiary component looking to "whether the same underlying factual evidence could support and establish both [claims]." *Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 483 (6th Cir. 2014). Thus, the critical consideration is operative "factual overlap" between the claims. *Id.* (quoting *United States v. Tohono O'odham Nation*, 563 U.S. 307, 315 (2011)).

*Id.* at 383–84.

Despite Jefferson's arguments to the contrary, there is considerable factual overlap between his pre-2017 and post-2017 discrimination claims, including allegations regarding the defendants' work assignment, training, employee review, and promotion practices. Jefferson argues that he "does not need to rely on the same witnesses to prevail" on his post-2017 discrimination claims and that the "new facts" he alleges "can stand alone from the witnesses or evidence submitted in the previous cause of action." (Doc. No. 17, PageID# 155, 160.) "But . . . it is well established that the rule of res judicata 'applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action . . . [t]o present evidence or grounds or theories of the case not presented in the first action . . . .'" *Musleh v. Am. S.S. Co.*, 326 F. Supp. 3d 507, 516 (E.D. Mich. 2018) (second, third, and fourth alterations in original) (quoting Restatement (Second) of Judgments § 25 (Am. L. Inst. 1982 supp. 2018)). Courts tend "'to see [a] claim in factual terms and to make it coterminous with the transaction . . . regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.'" *Id.* (first alteration in original) (quoting Restatement (Second) of Judgments § 24 cmt. a); *see also Dubuc*, 312 F.3d at 751 ("The doctrine of *res judicata* would become meaningless if a party could continue to relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit."). The fourth element is therefore satisfied with respect to Jefferson's pre- and post-2017 discrimination claims, and these claims are barred by claim preclusion.

The fourth element is not satisfied for Jefferson's retaliation claims. Jefferson did not assert a retaliation claim against the defendants in the 2017 action, and the core factual allegations supporting his retaliation claims took place after the 2017 action concluded.

The defendants have shown that claim preclusion bars Jefferson's pre- and post-2017 discrimination claims in this action and that these claims should be dismissed. The defendants have not shown that claim preclusion bars Jefferson's retaliation claims. The Court must therefore address the defendants' alternative argument that Jefferson has not plausibly alleged retaliation claims against them under Title VII and § 1981.

**B.      Jefferson's Retaliation Claims**

The defendants argue that Jefferson has not sufficiently alleged a causal connection between his complaints to management in 2012 and 2015, the 2017 action, and the defendants' termination of his employment in 2022. (Doc. Nos. 11, 18.) Specifically, they argue that "[t]he lengthy delay of ten, seven, or five years between [Jefferson's] purported 'contact to management' or federal court [c]omplaint and his subsequent termination" is "too attenuated to support any inference that [he] was terminated because of" these activities. (Doc. No. 11, PageID# 56–57.)

"[A] mere lapse in time between the protected activity and the adverse employment action does not inevitably foreclose a finding of causality." *Dixon v. Gonzales*, 481 F.3d 324, 335 (6th Cir. 2007). Courts only "require[ ] a very brief interval between protected activity and adverse action" if a plaintiff seeks "to demonstrate causation solely on the basis of temporal proximity."[4] *Sharp v. Aker Plant Servs. Grp.*, 600 F. App'x 337, 341 (6th Cir. 2015). "[E]ven if enough time

---

[4]     The defendants' reliance on *Fuhr v. Hazel Park School District*, 710 F.3d 668, 676 (6th Cir. 2013), to support their argument that Jefferson must allege temporal proximity is misplaced. *Fuhr* addressed a motion for summary judgment, not a motion to dismiss, and the plaintiff in that action sought to infer causation based on temporal proximity alone. *Id.* at 670, 675–76–.

passes between the protected activity and the adverse action so as to preclude a finding of causation based on the close timing alone, an employee can still prevail [at summary judgment or trial] if she 'couple[s] temporal proximity with other evidence of retaliatory conduct to establish causality.'" *Kirilenko-Ison v Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 665 (6th Cir. 2020) (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020)). The Sixth Circuit has thus "expressly reject[ed] the . . . position that a span of more than six months between protected activity and adverse action categorically precludes finding causation." *Sharp*, 600 F. App'x at 341 (first citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524–25 (6th Cir. 2008); and then citing *Dixon*, 481 F.3d at 335); *see also Dixon*, 481 F.3d at 335 (holding that even a ten-year gap between protected activity and adverse action does not necessarily preclude a finding of causation).

The 2017 action concluded in 2019, *Jefferson I*, 2019 WL 4689001, at *2 (entering summary judgment against Jefferson and his co-plaintiffs), and Jefferson alleges that the planned outsourcing of the User Security Department and the defendants' termination of Jefferson's employment took place in 2022 (Doc. No. 1.) But Jefferson does not only allege temporal proximity to support causation. Jefferson alleges that the defendants promised to transfer all User Security Department employees to new positions when they outsourced the department but only transferred employees who did not participate in the 2017 action or otherwise complain about discrimination and terminated Jefferson's employment instead of transferring him. (Doc. No. 1.) To support this allegation, Jefferson states that the defendants also "forced [the] termination" of his co-worker Tony Whitehead's employment because Whitehead complained about the defendants' discriminatory practices within the User Security Department. (*Id.* at PageID# 10,

¶ 45.) Jefferson thus alleges "other evidence of retaliatory conduct" to support his claims. *Kirilenko-Ison*, 974 F.3d at 665.

Jefferson has stated plausible retaliation claims under Title VII and 1981 because he sufficiently alleges that the defendants terminated his employment instead of transferring him to a new position because he complained about discrimination and brought the 2017 action. The defendants' motion to dismiss should therefore be denied in part with respect to Jefferson's retaliation claims.

Because Jefferson's complaint states plausible retaliation claims, the Court should deny without prejudice the defendants' requests for sanctions, costs, and attorney's fees.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motion to dismiss (Doc. No. 10) be GRANTED IN PART AND DENIED IN PART. The motion should be granted with respect to Jefferson's discrimination claims and denied with respect to his retaliation claims.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 7th day of August, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

16

Case 3:22-cv-00862   Document 22   Filed 08/07/23   Page 16 of 16 PageID #: 191