UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DENNIS JEFFERSON,<br><br>    Plaintiff,<br><br>v.<br><br>FRESENIUS MEDICAL CARE HOLDINGS, INC., et al.,<br><br>    Defendants. | Case No. 3:22-cv-00862<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable Eli J. Richardson, District Judge

**REPORT AND RECOMMENDATION**

This action brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e–2000e-17, and 42 U.S.C. § 1981, arises out of pro se Plaintiff Dennis Jefferson's employment with Defendants Fresenius Medical Care Holdings, Inc., and National Medical Care, Inc. (Doc. No. 1.) The defendants have filed a motion for summary judgment under Federal Rule of Civil Procedure 56 on Jefferson's remaining Title VII and § 1981 retaliation claims against them. (Doc. No. 38.) Jefferson has responded in opposition (Doc. Nos. 42, 43), and the defendants have filed a reply (Doc. No. 47).

Considering the record evidence as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant the defendants' motion for summary judgment.

I. **Background**

   A. **Factual Background**[1]

The defendants provide "products and services for individuals undergoing dialysis treatment because of chronic kidney failure." (Doc. No. 44, PageID# 364, ¶ 1.) Jefferson, who identifies himself as "a Black male" (Doc No. 46-2, PageID# 405, ¶ 1), began working at the defendants' "Nashville, Tennessee office on a temporary assignment" "[o]n or about January 17, 2011" (Doc. No. 44, PageID# 365, ¶ 3). "On April 29, 2013, Jefferson was hired as a full-time employee of a Fresenius entity in the position of a User Security Administrator on the User Security team." (*Id.* at ¶ 4.) "The User Security Team provided support to Fresenius customers with technical issues relating to user security." (*Id.* at ¶ 5.) Jefferson states that "this employment offer[ ] only came after [he] called the HR hot line to threaten to sue the company for discriminatory employment practices after [Fresenius] hired [ ] Dwight Lay and Randall Cunningham[, both white men,] as [ ] fulltime employee[s]." (Doc. No. 46-2, PageID# 406, ¶ 6.) Sometime in 2015, Jefferson "ma[de] a [racial] discrimination complaint to" Fresenius official Joseph Dixon "about the hiring/promoting [of] Lay to" a supervisory position for which Jefferson had also applied. (*Id.* at ¶ 9.)

On April 10, 2017, Jefferson and four other African American employees filed a complaint against the defendants in this district alleging discrimination and harassment claims based on race. (Doc. No. 44); Complaint, *Hannah v. Fresenius USA Mfg., Inc.*, Case No. 3:17-cv-00697 (M.D.

---

[1] The facts in this section are drawn from the defendants' statement of undisputed material facts (Doc. No. 40); the summary judgment declaration of Fresenius Senior Human Resources Business Partner Diana Hughes (Doc. No. 40-1); Jefferson's response to the defendants' statement of undisputed material facts (Doc. No. 44); Jefferson's statement of additional disputed material facts (Doc. No. 45); Jefferson's affidavit (Doc. No. 46-2); and the defendants' response to Jefferson's statement of additional disputed material facts (Doc. No. 48).

Tenn. Apr. 10, 2017), ECF No. 1. "They alleged that the defendants discriminated against them by 'favor[ing white team members] in job assignments, giving [the white team members] advance notice of job postings, and promoti[ng the white team members] to supervisor or manager positions without industry education or certification[.]'" (Doc. No. 22, PageID# 178 (alterations in original) (quoting Doc. No. 1, PageID# 6, ¶ 25).) Jefferson's claims included a failure-to-promote claim based on the defendants' 2015 promotion of Lay to a supervisory position. *See Jefferson v. Fresenius Med. Care Holdings, Inc.*, No. 3:17-cv-00697, 2019 WL 4725194, *10–12 (M.D. Tenn. Aug. 30, 2019), *report and recommendation adopted*, 2019 WL 4689001 (M.D. Tenn. Sept. 26, 2019). In 2019, the court granted summary judgment to the defendants on Jefferson's and two other remaining plaintiffs' claims. *Id.* at *17. The Sixth Circuit affirmed the district court's grant of summary judgment in 2020. Order, *Hannah v. Fresenius Med. Care Holdings, Inc.*, No. 19-6209 (6th Cir. July 28, 2020), ECF No. 17-2. And the Supreme Court denied the plaintiff-appellants' petition for a writ of certiorari in 2021. Notice of U.S. Supreme Court Letter, *Hannah v. Fresenius USA Mfg., Inc.*, Case No. 3:17-cv-00697 (M.D. Tenn. Jan. 11, 2021), ECF No. 155.

The defendants assert that, years after Jefferson and the other plaintiffs filed the 2017 action, "Fresenius determined that it needed to outsource the User Security Team due to organizational changes." (Doc. No. 40-1, PageID# 325, ¶ 5.) "At the time Fresenius notified the User Security Team of the outsourcing, it also notified the team members that they were eligible to be rehired for other positions within the Company." (Doc. No. 44, PageID# 367, ¶ 12.) The defendants assert that Jefferson "did not apply for any other positions within Fresenius following notification of the outsourcing of the User Security Team." (Doc. No. 40-1, PageID# 326, ¶ 9.) Jefferson states that, before the outsourcing took place, he "informed" his supervisor Jim Cantwell that he "would like a list of all the departments" within Fresenius with opportunities "for

3

Case 3:22-cv-00862    Document 60    Filed 02/13/25    Page 3 of 14 PageID #: 472

advancement" because "it was a large enterprise and all listings [did] not appear within the same location." (Doc. No. 46-2, PageID# 408, ¶ 19.) According to Jefferson, Cantwell told him "that he would get that listing after the HR Department finished their year-end department audit" and asked Jefferson "to start training the new outsourced team" in the meantime. (*Id.* at ¶ 21.) Jefferson states that, around the time he asked Cantwell for the list of departments, Lay informed Jefferson that Lay would "be retaining his position to supervis[e] the outsourced team and that [another employee] w[ould] also retain his position in the department to support the supervision of the staff." (*Id.* at ¶ 20.) The defendants have not disputed that "Lay is still working . . . as the supervisor [ ] over the outsourced staff." (Doc. No. 48, PageID# 433, ¶ 22.)

Jefferson trained the outsourced staff for six or seven months. (Doc. Nos. 46-2, 48) Jefferson asserts that "Cantwell waited" while Jefferson conducted this training "and then told [Jefferson] that HR informed [ ] Cantwell that [Fresenius] did not have any openings in any other department for [Jefferson] to transfer." (Doc. No. 46-2, PageID# 408, ¶ 23.) The defendants terminated Jefferson's employment in July 2022. (Doc. Nos. 44, 46-2, 48.)

### B. Procedural History

Jefferson initiated this action on October 25, 2022, by filing a complaint against the defendants alleging claims of racial discrimination and retaliation under Title VII and § 1981. (Doc. No. 1.) Jefferson's complaint contains allegations describing the defendants' conduct throughout the duration of his employment, beginning with his hiring as a contractor in January 2011 and continuing through the termination of his employment in July 2022. (*Id.*) The Court summarized Jefferson's allegations in addressing the defendants' motion to dismiss:

> Jefferson alleges that, "[s]ince the initial employment cont[r]act, the defendant[s] ha[ve] repeatedly isolated and or prohibited [him] from being fully cross trained and [ ] educated in the assigned duties of a User Security Administrator . . . ." (*Id.* at PageID# 4, ¶ 15.) He states that the defendants relegated him "to phone support for password resets" and other "limited application support"

> roles and assigned tasks to "white team members that allowed them to advance in leadership positions as team leads, [s]enior technicians, or allowed them to be promoted within the company." (*Id.* at ¶ 16.) Jefferson alleges that the defendants engaged in "discriminatory actions for promotions and advancement . . . by scaling back [his] performance appraisals, while evaluating his white co-workers at a higher performance level for advancement and promotions" even though the co-workers "were less educated and experienced in the technology field." (*Id.* at ¶ 17.) He states that the defendants' biased performance review process "establish[ed] a policy and practice of discriminating against [him] and minorities throughout their enterprises." (*Id.* at PageID# 5, ¶ 21.)
>
> . . .
>
> Jefferson alleges that, "even after" he and his coworkers filed the 2017 action, the defendants "continued [their] discriminatory actions for promotions and advancement" and "never corrected . . . their discriminatory practice . . . ." (*Id.* at PageID# 4, 5, ¶¶ 17, 22.) He states that the defendants informed User Security Department employees that their jobs would be outsourced but promised that the outsourcing "would not affect their employment" because "each employee would be moved into open positions in the company that the employee select[ed], and that the company would send the employee back to school if education was needed for the selected position." (*Id.* at PageID# 11, ¶ 49.) Jefferson alleges that, while the defendants allowed his "coworkers who did not participate in the [2017] action . . . to find and transfer to departments of their choice . . . [,]" they "forced the termination of the employees that participated in" the lawsuit or otherwise complained about discrimination, including Jefferson. (*Id.* at ¶ 50.) Jefferson states that the defendants terminated his employment on July 21, 2022. (Doc. No. 1.)

(Doc. No. 22, PageID# 177–78 (most alterations in original).) Jefferson "declare[d] under penalty of perjury that the" allegations in his complaint are "true and correct." (Doc. No. 1, PageID# 15.) He seeks $1.5 million in compensatory damages and additional punitive damages. (Doc. No. 1.)

The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 5.)

The defendants moved to dismiss Jefferson's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted (Doc. No. 10), arguing that the 2017 action precluded Jefferson's discrimination and retaliation claims through the doctrine of res judicata and that Jefferson had failed to allege sufficient facts to support his retaliation claim. (Doc. No. 11). Jefferson opposed the defendants' motion. (Doc. No. 17.) In

analyzing the defendants' motion to dismiss, the Magistrate Judge addressed "three categories of claims against the defendants" asserted in "Jefferson's complaint": "(1) discrimination claims arising before the 2017 action (pre-2017 discrimination claims); (2) discrimination claims arising after the 2017 action (post-2017 discrimination claims); and (3) retaliation claims arising after the 2017 action (retaliation claims)." (Doc. No. 22, PageID# 183.) The Magistrate Judge found that "[t]he question of whether the defendants discriminated against Jefferson in violation of Title VII and § 1981 before he filed the 2017 action was litigated in that action." (*Id.* at PageID# 184.) The Magistrate Judge also found "that the conduct underlying" "Jefferson's post-2017 discrimination claims" "was a continuation of the conduct underlying the pre-2017 discrimination claims" which "the Court determined in the 2017 action . . . was not discriminatory." (*Id.*) The Magistrate Judge explained that,

> in the rare circumstance where "it is obvious that the alleged ongoing unlawful conduct" raised in a subsequent action "is actually the defendant continuing on the same course of conduct which has previously been found by a court to be proper and lawful," the court "must conclude that the plaintiff is simply trying to relitigate the same claim which is barred by res judicata."

(*Id.* at PageID# 185 (first quoting *Zibbell v. Marquette Cnty. Res. Mgmt.*, No. 2:12-cv-302, 2013 WL 625062, at *11 (W.D. Mich. Feb. 20, 2013); and then citing *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002)).) The Magistrate Judge found, however, that "[t]he same cannot be said . . . for Jefferson's retaliation claims." (*Id.* at PageID# 187.) Rather, the Magistrate Judge found that Jefferson's retaliation claims rest on his complaint's "allegations that the defendants treated him differently than other employees whose jobs were outsourced by terminating his employment instead of allowing him to transfer to another position because he filed the 2017 action" and that Jefferson could not have litigated these claims in the 2017 action, "which concluded before the defendants terminated Jefferson's employment." (*Id.*) Accordingly, the Magistrate Judge entered a report and recommendation recommending that the Court grant in part

and deny in part the defendants' motion to dismiss and dismiss Jefferson's discrimination claims but allow his retaliation claims to proceed. (Doc. No. 22.) The parties did not object to the Magistrate Judge's report and recommendation within the time provided by the Federal Rules, and the Court adopted its recommendation on August 28, 2023.[2] (Doc. No. 23.)

On May 3, 2024, the defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56 on Jefferson's remaining retaliation claims. (Doc. No. 38.) The defendants support their summary judgment motion with a memorandum of law (Doc. No. 39), a statement of undisputed material facts (Doc. No. 40), and Fresenius Senior Human Resources Business Partner Diana Hughes's declaration (Doc. No. 40-1). Jefferson responded in opposition to the defendants' motion (Doc. Nos. 42, 43) and filed a separate response to the defendants' statement of undisputed material facts (Doc. No. 44). Jefferson also filed a "Reply Statement of Undisputed Material Facts . . ." (Doc. No. 45, PageID# 370) that the defendants construe as an additional statement of disputed facts (Doc. No. 48) as contemplated by this Court's Local Rule 56.01(c). *See* M.D. Tenn. R. 56.01(c) (response to statement of facts). The defendants filed a reply in support of their motion for summary judgment (Doc. No. 47) and a separate response to Jefferson's statement of additional disputed facts (Doc. No. 48).

## II. Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any

---

[2] On October 30, 2023, Jefferson filed a "Motion to Ascertain Court Defined Protected Behavior in Cause of Action" responding to the Magistrate Judge's report and recommendation (R&R) and disagreeing with its findings. (Doc. No. 28, PageID# 227.) The Court construed this filing "as a set of putative objections to the R&R" and "disregarded" them as untimely. (Doc. No. 50, PageID# 445.) The Court further found that, "[t]o the extent that [Jefferson's] [f]iling could properly be deemed a motion, it presents no basis for relief and thus is DENIED." (*Id.* at PageID# 446.)

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v.*

*Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

### III. Analysis

Title VII prohibits employers from discharging or otherwise discriminating against any individual with respect to the compensation, terms, conditions, or privileges of his employment because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). It also prohibits employers from discriminating against any individual in retaliation for opposing such discrimination. *Id.* § 2000e-3(a). Section 1981 prohibits "intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). Federal courts use the same framework for analyzing claims brought under Title VII and § 1981. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018); *Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 862 (M.D. Tenn. 2021) (Richardson, J.).

To prevail on a Title VII retaliation claim at summary judgment, a plaintiff must present either direct or circumstantial evidence of retaliation for engaging in protected conduct. *See Rogers*, 897 F.3d at 771. "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008). Because Jefferson has not identified any direct evidence of retaliation, the Court must evaluate his claims under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rogers*, 897 F.3d at 771; *Imwalle*, 515 F.3d at 544. Specifically, this Court has explained that:

> When a defendant-movant challenges a plaintiff's ability to reach a jury on an indirect-evidence theory of employment discrimination, there are a number of steps potentially implicated, though not all of them necessarily need be addressed in the analysis. The number of steps to be addressed depends on whether the defendant-movant seeks to prevail at the first step, or at the second and third step, or at both the first step and the second and third step . . .
>
> To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *E.g., Banks v. State of Ohio*, No. 94-3866, 50 F.3d 10, 1995 WL 118993, *2 (6th Cir. Mar. 20, 1995). If the defendant does so, then the burden shifts to the plaintiff to show that at trial it could "make out a *prima facie* case of discrimination by a preponderance of the evidence." *Redlin* [*v. Grosse Pointe Pub. Sch. Sys.*], 921 F.3d [599,] 606 [(6th Cir. 2019)]. If the plaintiff fails to succeed here, then the plaintiff suffers summary judgment in favor of the defendant on the claim. But if the plaintiff succeeds here, defendant does not prevail at the first step and is relegated to try instead to prevail at the second and third steps of *McDonnell-Douglas*.
>
> At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown* [*v. Kelsey-Hayes Co.*], 814 F. App'x [72,] 80 [(6th Cir. 2020)] (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

*Hargis v. Vulcan Constr. Materials, LLC*, No. 3:22-cv-00087, 2024 WL 2060129, at *6 (M.D. Tenn. May 7, 2024) (first alteration in original) (quoting *Veith v. Tyson Fresh Meat, Inc.*, No. 3:19-cv-01065, 2022 WL 1231229, at *9–10 (M.D. Tenn. Apr. 26, 2022)).

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity under Title VII; (2) the employer knew about his exercise of protected rights; (3) the employer subsequently took an adverse employment action against him; and (4) there was a causal connection between the adverse employment action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

The defendants challenge only the fourth element here, arguing that Jefferson cannot identify sufficient record evidence of any causal connection between the defendants' termination of Jefferson's employment in July 2022 and Jefferson's prior internal discrimination complaints and the 2017 action. (Doc. No. 39.) Retaliation claims under Title VII "must be proved according to traditional principles of but-for causation," which means that a plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Here, Jefferson would have to prove that his employment would not have been terminated if he had not complained about discrimination during his employment and had not litigated the 2017 action.

To support their argument that Jefferson cannot establish causation, the defendants point out that several years passed between Jefferson's complaints and lawsuit and the termination of his employment. (Doc. No. 39.) They also point to Hughes's sworn statements that Jefferson was only "laid off as a result" of Fresenius's "determin[ation] that it needed to outsource the User Security Team due to organizational changes" and that Jefferson was informed he could apply for other positions within Fresenius but did not. (Doc. No. 40-1, PageID# 325–26, ¶¶ 5, 6, 8, 9.) Thus, the defendants have carried their initial burden to show the absence of a genuine dispute that Jefferson's protected activity was not the but-for cause for terminating his employment.

In response, Jefferson argues that the defendants' alleged discriminatory actions toward him regarding work assignments, training, performance reviews, and promotion practices support a finding of causation. (Doc. No. 43.) Jefferson argues that the defendants only began "fail[ing] to treat [him] equal[ly] and fairly concerning departmental job duties and assignments . . . after [he] engag[ed] in the protected act[s] of" complaining about racial discrimination and litigating the 2017 action, and Jefferson cites his affidavit for support. (*Id.* at PageID# 353.) As the defendants

point out, however, Jefferson is reasserting his racial discrimination allegations under the label of causation. Jefferson's affidavit and argument attempt to reframe the timing of the defendants' alleged discriminatory conduct—the same conduct that was the basis of Jefferson's now-dismissed racial discrimination claims—to better support his surviving retaliation claims by asserting that the defendants did not begin treating Jefferson differently than white employees until after Jefferson filed the 2017 action. But, as the Court already found in dismissing Jefferson's discrimination claims, Jefferson's complaint specifically alleges that the defendants' discriminatory actions toward Jefferson, including work assignment practices, occurred throughout his employment and not just after 2017:

> Jefferson's complaint alleges that the defendants' racially discriminatory conduct began when Jefferson was hired and continued after Jefferson filed the 2017 action. (Doc. No. 1.) Jefferson states that:
>
>> Since the initial employment cont[r]act, the defendant[s] ha[ve] repeatedly isolated and or prohibited [him] from being fully cross trained and or educated in the assigned duties of a User Security Administrator by [relegating him] to phone support for password resets, and limited application support concerning the duties of the department from January 2011–July 21, 2022.
>
> (*Id.* at PageID# 4, ¶ 15.) Jefferson also alleges that, throughout his employment, "the defendant[s] continuously hired managers over the User Security department that did not understand the expectations, skills, and training needed for the team members in the department[.]" (*Id.* at PageID# 5, ¶ 18.) He further alleges that the defendants "never corrected [ ] or properly governed their discriminatory practice even after [he and others] filed" their first action under Title VII and § 1981. (*Id.* at ¶ 22.) Instead, Jefferson alleges, the defendants "continued [their] discriminatory actions for promotions and advancement . . . by scaling back [Jefferson's] performance appraisals, while evaluating his white co-workers at a higher performance level" to promote them over Jefferson, even though they were "less educated and experienced . . . ." (*Id.* at PageID# 4, ¶ 17.)

(Doc. No. 22, PageID# 185 (alterations in original).) Jefferson's affidavit testimony about the timing of the defendants' challenged actions therefore contradicts the allegations in his verified complaint, and it is well established that "a party cannot avoid summary judgment through the

introduction of self-serving affidavits that contradict prior sworn testimony." *U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 303 (6th Cir. 1998).

Jefferson therefore has not identified record evidence sufficient to create a genuine dispute of material fact that his discrimination complaints and litigation of the 2017 action were the but-for cause of the defendants' termination of his employment. He therefore has not established a prima facia case of retaliation by a preponderance of the evidence. *See Hargis*, 2024 WL 2060129, at *6 (quoting *Veith*, 2022 WL 1231229, at *10); *see also Redlin*, 921 F.3d at 606.

Further, even if Jefferson could establish a prima facia retaliation claim, the defendants argue that the outsourcing of Jefferson's department is a legitimate nondiscriminatory reason for terminating Jefferson's employment. (Doc. No. 39.) To prevail on a retaliation claim "where the defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must prove not only that the defendant's proffered reason was a pretext, but that the real reason for the employer's action was intentional retaliation." *Imwalle*, 515 F.3d at 544. There are three ways to make this showing:

> The plaintiff may show that (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action.

*Id.* at 545. Whichever "rebuttal method is employed, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Id.* (alteration in original) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)).

Jefferson does not dispute that the defendants outsourced user security team jobs, including his position. Jefferson argues, however, that outsourcing was a pretext for terminating his employment because the defendants allowed other people in his department to continue their

employment. (Doc. No. 43.) The defendants respond that this does not defeat their legitimate nondiscriminatory reason because Jefferson did not apply for other positions and, thus, he cannot argue that he would not have been hired for one. (Doc. Nos. 39, 47.) Jefferson argues that he did not apply because he was relying on Cantwell giving him a consolidated list of all open positions (Doc. No. 43), but there is no evidence that Cantwell did not give Jefferson the list because of Jefferson's protected conduct or because of his race, and there is no evidence that Jefferson could not have applied for a different position without the list from Cantwell. Jefferson therefore has not rebutted the defendants' articulated nondiscriminatory reason for terminating his employment. *See Imwalle*, 515 F.3d at 545.

Thus, the defendants are entitled to summary judgment on Jefferson's retaliation claims.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motion for summary judgment (Doc. No. 38) be GRANTED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 13th day of February, 2025.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge