IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DENNIS JEFFERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:22-cv-00862 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| FRESENIUS MEDICAL CARE ) | |
| HOLDINGS INC., ET AL., ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Pending before the Court[1] is a report and recommendation (Doc. No. 60, "R&R") of the Magistrate Judge, which recommends that the Court grant Defendants' motion for summary judgment (Doc. No. 38, "Motion"). No objections to the R&R have been filed and the time for filing objections has now expired.[2]

Absent any objection to the statement of facts (regarding the procedural history and underlying circumstances of this case) set forth by the Magistrate Judge in the R&R, the Court adopts that factual background in its entirety and includes it here for reference.

> The defendants provide "products and services for individuals undergoing dialysis treatment because of chronic kidney failure." (Doc. No. 44, PageID# 364, ¶ 1.) Jefferson, who identifies himself as "a Black male" (Doc No. 46-2, PageID# 405, ¶ 1), began working at the defendants' "Nashville, Tennessee office on a temporary assignment" "[o]n or about January 17, 2011" (Doc. No. 44, PageID# 365, ¶ 3). "On April 29, 2013, Jefferson was hired as a full-time employee of a

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

[2] Under Fed. R. Civ. P. 72(b), any party has fourteen (14) days from receipt of the R&R in which to file any written objections to the Recommendation with the District Court. For pro-se plaintiffs, like Plaintiff, the Court is willing to extend this 14-day deadline by three days to allow time for filings to be transported by mail. But even this extension does not help Plaintiff because the R&R was filed on February 13, 2025 and as of March 11, 2025 Plaintiff has not filed any objections.

Fresenius entity in the position of a User Security Administrator on the User Security team." (*Id.* at ¶ 4.) "The User Security Team provided support to Fresenius customers with technical issues relating to user security." (*Id.* at ¶ 5.) Jefferson states that "this employment offer[ ] only came after [he] called the HR hot line to threaten to sue the company for discriminatory employment practices after [Fresenius] hired [ ] Dwight Lay and Randall Cunningham[, both white men,] as [ ] fulltime employee[s]." (Doc. No. 46-2, PageID# 406, ¶ 6.) Sometime in 2015, Jefferson "ma[de] a [racial] discrimination complaint to" Fresenius official Joseph Dixon "about the hiring/promoting [of] Lay to" a supervisory position for which Jefferson had also applied. (*Id.* at ¶ 9.)

On April 10, 2017, Jefferson and four other African American employees filed a complaint against the defendants in this district alleging discrimination and harassment claims based on race. (Doc. No. 44); Complaint, *Hannah v. Fresenius USA Mfg., Inc.,* Case No. 3:17-cv-00697 (M.D. Tenn. Apr. 10, 2017), ECF No. 1. "They alleged that the defendants discriminated against them by 'favor[ing white team members] in job assignments, giving [the white team members] advance notice of job postings, and promoti[ng the white team members] to supervisor or manager positions without industry education or certification[.]'" (Doc. No. 22, PageID# 178 (alterations in original) (quoting Doc. No. 1, PageID# 6, ¶ 25).) Jefferson's claims included a failure-to-promote claim based on the defendants' 2015 promotion of Lay to a supervisory position. *See Jefferson v. Fresenius Med. Care Holdings, Inc.,* No. 3:17-cv-00697, 2019 WL 4725194, *10–12 (M.D. Tenn. Aug. 30, 2019), *report and recommendation adopted*, 2019 WL 4689001 (M.D. Tenn. Sept. 26, 2019). In 2019, the court granted summary judgment to the defendants on Jefferson's and two other remaining plaintiffs' claims. *Id.* at *17. The Sixth Circuit affirmed the district court's grant of summary judgment in 2020. Order, *Hannah v. Fresenius Med. Care Holdings, Inc.*, No. 19- 6209 (6th Cir. July 28, 2020), ECF No. 17-2. And the Supreme Court denied the plaintiff-appellants' petition for a writ of certiorari in 2021. Notice of U.S. Supreme Court Letter, *Hannah v. Fresenius USA Mfg., Inc.*, Case No. 3:17-cv-00697 (M.D. Tenn. Jan. 11, 2021), ECF No. 155.

The defendants assert that, years after Jefferson and the other plaintiffs filed the 2017 action, "Fresenius determined that it needed to outsource the User Security Team due to organizational changes." (Doc. No. 40-1, PageID# 325, ¶ 5.) "At the time Fresenius notified the User Security Team of the outsourcing, it also notified the team members that they were eligible to be rehired for other positions within the Company." (Doc. No. 44, PageID# 367, ¶ 12.) The defendants assert that Jefferson "did not apply for any other positions within Fresenius following notification of the outsourcing of the User Security Team." (Doc. No. 40-1, PageID# 326, ¶ 9.) Jefferson states that, before the outsourcing took place, he "informed" his supervisor Jim Cantwell that he "would like a list of all the departments" within Fresenius with opportunities "for advancement" because "it was a large enterprise and all listings [did] not appear within the same location." (Doc. No. 46-2, PageID# 408, ¶ 19.) According to Jefferson, Cantwell told him

"that he would get that listing after the HR Department finished their year-end department audit" and asked Jefferson "to start training the new outsourced team" in the meantime. (*Id.* at ¶ 21.) Jefferson states that, around the time he asked Cantwell for the list of departments, Lay informed Jefferson that Lay would "be retaining his position to supervis[e] the outsourced team and that [another employee] w[ould] also retain his position in the department to support the supervision of the staff." (*Id.* at ¶ 20.) The defendants have not disputed that "Lay is still working . . . as the supervisor [ ] over the outsourced staff." (Doc. No. 48, PageID# 433, ¶ 22.)

Jefferson trained the outsourced staff for six or seven months. (Doc. Nos. 46-2, 48) Jefferson asserts that "Cantwell waited" while Jefferson conducted this training "and then told [Jefferson] that HR informed [ ] Cantwell that [Fresenius] did not have any openings in any other department for [Jefferson] to transfer." (Doc. No. 46-2, PageID# 408, ¶ 23.) The defendants terminated Jefferson's employment in July 2022. (Doc. Nos. 44, 46-2, 48.)

Jefferson initiated this action on October 25, 2022, by filing a complaint against the defendants alleging claims of racial discrimination and retaliation under Title VII and § 1981. (Doc. No. 1.) Jefferson's complaint contains allegations describing the defendants' conduct throughout the duration of his employment, beginning with his hiring as a contractor in January 2011 and continuing through the termination of his employment in July 2022. (*Id.*) The Court summarized Jefferson's allegations in addressing the defendants' motion to dismiss:

> Jefferson alleges that, "[s]ince the initial employment cont[r]act, the defendant[s] ha[ve] repeatedly isolated and or prohibited [him] from being fully cross trained and [ ] educated in the assigned duties of a User Security Administrator . . . ." (*Id.* at PageID# 4, ¶ 15.) He states that the defendants relegated him "to phone support for password resets" and other "limited application support" roles and assigned tasks to "white team members that allowed them to advance in leadership positions as team leads, [s]enior technicians, or allowed them to be promoted within the company." (*Id.* at ¶ 16.) Jefferson alleges that the defendants engaged in "discriminatory actions for promotions and advancement . . . by scaling back [his] performance appraisals, while evaluating his white co-workers at a higher performance level for advancement and promotions" even though the coworkers "were less educated and experienced in the technology field." (*Id.* at ¶ 17.) He states that the defendants' biased performance review process "establish[ed] a policy and practice of discriminating against [him] and minorities throughout their enterprises." (*Id.* at PageID# 5, ¶ 21.)
>
> . . .

> Jefferson alleges that, "even after" he and his coworkers filed the 2017 action, the defendants "continued [their] discriminatory actions for promotions and advancement" and "never corrected . . . their discriminatory practice . . . ." (*Id.* at PageID# 4, 5, ¶¶ 17, 22.) He states that the defendants informed User Security Department employees that their jobs would be outsourced but promised that the outsourcing "would not affect their employment" because "each employee would be moved into open positions in the company that the employee select[ed], and that the company would send the employee back to school if education was needed for the selected position." (*Id.* at PageID# 11, ¶ 49.) Jefferson alleges that, while the defendants allowed his "coworkers who did not participate in the [2017] action . . . to find and transfer to departments of their choice . . . [,]" they "forced the termination of the employees that participated in" the lawsuit or otherwise complained about discrimination, including Jefferson. (*Id.* at ¶ 50.) Jefferson states that the defendants terminated his employment on July 21, 2022. (Doc. No. 1.)

(Doc. No. 22, PageID# 177–78 (most alterations in original).) Jefferson "declare[d] under penalty of perjury that the" allegations in his complaint are "true and correct." (Doc. No. 1, PageID# 15.) He seeks $1.5 million in compensatory damages and additional punitive damages. (Doc. No. 1.)

The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 5.)

The defendants moved to dismiss Jefferson's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted (Doc. No. 10), arguing that the 2017 action precluded Jefferson's discrimination and retaliation claims through the doctrine of res judicata and that Jefferson had failed to allege sufficient facts to support his retaliation claim. (Doc. No. 11). Jefferson opposed the defendants' motion. (Doc. No. 17.) In analyzing the defendants' motion to dismiss, the Magistrate Judge addressed "three categories of claims against the defendants" asserted in "Jefferson's complaint": "(1) discrimination claims arising before the 2017 action (pre-2017 discrimination claims); (2) discrimination claims arising after the 2017 action (post-2017 discrimination claims); and (3) retaliation claims arising after the 2017 action (retaliation claims)." (Doc. No. 22, PageID# 183.) The Magistrate Judge found that "[t]he question of whether the defendants discriminated against Jefferson in violation of Title VII and § 1981 before he filed the 2017 action was litigated in that action." (*Id.* at PageID# 184.) The Magistrate Judge also found "that the conduct underlying" "Jefferson's post-2017 discrimination claims" "was a continuation of the conduct underlying the pre-2017 discrimination claims" which

"the Court determined in the 2017 action . . . was not discriminatory." (*Id.*) The Magistrate Judge explained that,

> in the rare circumstance where "it is obvious that the alleged ongoing unlawful conduct" raised in a subsequent action "is actually the defendant continuing on the same course of conduct which has previously been found by a court to be proper and lawful," the court "must conclude that the plaintiff is simply trying to relitigate the same claim which is barred by res judicata."

(*Id.* at PageID# 185 (first quoting *Zibbell v. Marquette Cnty. Res. Mgmt.*, No. 2:12-cv-302, 2013 WL 625062, at *11 (W.D. Mich. Feb. 20, 2013); and then citing *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002)).) The Magistrate Judge found, however, that "[t]he same cannot be said . . . for Jefferson's retaliation claims." (*Id.* at PageID# 187.) Rather, the Magistrate Judge found that Jefferson's retaliation claims rest on his complaint's "allegations that the defendants treated him differently than other employees whose jobs were outsourced by terminating his employment instead of allowing him to transfer to another position because he filed the 2017 action" and that Jefferson could not have litigated these claims in the 2017 action, "which concluded before the defendants terminated Jefferson's employment." (*Id.*) Accordingly, the Magistrate Judge entered a report and recommendation recommending that the Court grant in part and deny in part the defendants' motion to dismiss and dismiss Jefferson's discrimination claims but allow his retaliation claims to proceed. (Doc. No. 22.) The parties did not object to the Magistrate Judge's report and recommendation within the time provided by the Federal Rules, and the Court adopted its recommendation on August 28, 2023 (Doc. No. 23.)

On May 3, 2024, the defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56 on Jefferson's remaining retaliation claims. (Doc. No. 38.) The defendants support their summary judgment motion with a memorandum of law (Doc. No. 39), a statement of undisputed material facts (Doc. No. 40), and Fresenius Senior Human Resources Business Partner Diana Hughes's declaration (Doc. No. 40-1). Jefferson responded in opposition to the defendants' motion (Doc. Nos. 42, 43) and filed a separate response to the defendants' statement of undisputed material facts (Doc. No. 44). Jefferson also filed a "Reply Statement of Undisputed Material Facts . . ." (Doc. No. 45, PageID# 370) that the defendants construe as an additional statement of disputed facts (Doc. No. 48) as contemplated by this Court's Local Rule 56.01(c). See M.D. Tenn. R. 56.01(c) (response to statement of facts). The defendants filed a reply in support of their motion for summary judgment (Doc. No. 47) and a separate response to Jefferson's statement of additional disputed facts (Doc. No. 48).

(Doc. No. 60 at 2-7) (footnotes omitted). Ultimately, in the R&R, the Magistrate Judge recommended that Defendants' motion for summary judgment be granted.

No party has filed objections to the R&R, and the time to file objections with the Court has passed. Under Fed. R. Civ. P. 72(b), any party has fourteen (14) days from receipt of the R&R in which to file any written objections to the report and recommendation with the District Court. As noted, for pro-se litigants, like Plaintiff here, the Court is willing to extend this fourteen-day deadline by three days to allow time for filings to be transported by mail. But Plaintiff did not file any objections to the report and recommendation within even this extended window.

The failure to object to a report and recommendation releases the Court from its duty to independently review the matter. *Frias; Hart v. Bee Property Mgmt.*, No. 18-cv-11851, 2019 WL 1242372, at *1 (E.D. Mich. March 18, 2019) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). A district judge is not required to review, under a *de novo* or any other standard, those aspects of a report and recommendation to which no objection is made. *Ashraf v. Adventist Health System/Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Sec.*, No. 3:18-CV-0010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)).

Absent objection, the R&R (Doc. No. 60) is adopted and approved. Accordingly, Defendants' Motion (Doc. No. 38) is GRANTED, and this action is DISMISSED WITH PREJUDICE in its entirety.

Accordingly, the Clerk is DIRECTED to enter judgment pursuant to Fed. R. Civ. P. 58 and close the file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE